**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1357

JOHN A. MCDONALD; JOHN A. MCDONALD, II,

Plaintiffs - Appellants,

versus

ROBERT FRIEDMAN; RED HOT & BLUE RESTAURANTS,
INCORPORATED,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Richard D. Bennett, District Judge. (CA-
02-2812-RDB)

Argued: February 2, 2005          Decided: April 19, 2005

Before WILKINSON and KING, Circuit Judges, and Samuel G. WILSON,
United States District Judge for the Western District of Virginia,
sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** W. Stanwood Whiting, OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, Towson, Maryland, for Appellants. Steven Keith Fedder,
LEITESS, LEITESS & FRIEDBERG, P.C., Baltimore, Maryland, for
Appellees. **ON BRIEF:** William F. C. Marlow, Jr., MARLOW & WYATT,
Towson, Maryland, for Appellants. Damon L. Krieger, PIPER RUDNICK,
L.L.P., Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

This is an action for fraud brought under the district court's diversity jurisdiction by John A. McDonald and his son John A. McDonald, II (the "McDonalds"), against Red Hot & Blue Restaurants, Inc. ("RHB") and its president, Robert Friedman, arising out of the failure of a franchising agreement with RHB's subsidiary, Red Hot & Blue, Inc. (referred to herein as the "subsidiary" or as "RHB's subsidiary"). The district court granted summary judgment to the defendants, and we affirm.

I.

In March 1997, the McDonalds entered into a written franchise agreement with RHB's subsidiary to operate a restaurant franchise in Morgantown, West Virginia. Under the agreement, the McDonalds paid the subsidiary an initial, non-refundable franchise fee of $25,000 and agreed to pay royalties based on a percentage of their gross sales. The agreement, which contained an integration clause and a "time is of the essence" provision, called for the McDonalds to construct the facility and begin operation within twelve months.[1] The agreement also required the McDonalds to submit their site proposals in writing. The McDonalds submitted one written proposal and RHB's subsidiary approved it on July 9, 1999.

---

[1]The agreement provided for a one-year limitations period for all claims arising out of the agreement or the relationship of the parties.

However, due to some problems with that site, the McDonalds did not open a franchise at the approved location. Although the McDonalds claim they sought to identify alternative sites, they did not make any further written proposals. On August 23, 2000, nearly three and a half years after the execution of the franchise agreement, Friedman sent the McDonalds a letter noting that the McDonalds had failed to open a franchise restaurant as the agreement required and indicating RHB's desire to bring its business relationship with them to an "amicable end." Although not required under the agreement, the letter proposed to refund $5,000 of the initial $25,000 franchise fee. The McDonalds rejected the offer, and on October 30, 2000, Friedman terminated the franchise agreement because the McDonalds had failed to comply with its express terms.

Six months later, in June 2001, the McDonalds' counsel notified RHB of the sale at public auction of used restaurant equipment that the McDonalds had purchased "as is" from a third party in 1998 for $115,000. The letter referred to the "recent wrongful termination of their franchise" and alleged that the McDonalds "were defrauded into not only purchasing the equipment but entering into the franchise agreement in the first instance." The McDonalds sold the equipment at public auction for less than $10,000.

The McDonalds filed this action in July 2002, in the Circuit Court for Baltimore County, Maryland. Rather than sue the

3

franchisor, RHB's subsidiary, for breach of the franchise agreement, the McDonalds sued RHB and Friedman, alleging two counts of fraud.[2] On the first count, the McDonalds essentially claimed that the defendants fraudulently induced them to enter into a franchise agreement that they never intended to honor. The McDonalds claimed that Friedman orally represented that RHB's subsidiary would approve site selections in other locations, including Maryland, and that he promised the McDonalds "all the time they needed" to find a restaurant site. They claimed that the defendants did not honor these oral inducements or intend to at the time Friedman gave them. On the second count, the McDonalds claimed that the defendants intentionally misrepresented the value of the used restaurant equipment the McDonalds purchased from a former franchisee. The defendants removed this case to the district court. Following discovery, the court found that the McDonalds' evidence was insufficient to establish reasonable reliance, an essential element of their fraud claims, and entered summary judgment for the defendants.

## II.

We review a district court's award of summary judgment *de novo*. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). After

---

[2]As the district court correctly noted, the McDonalds could not raise a breach of contract claim because the franchise agreement's one-year limitations period had passed.

careful consideration of the parties' briefs and oral argument, the record, and the relevant legal authorities, we conclude that the district court properly granted summary judgment to defendants. Accordingly, we affirm essentially on the reasoning of the District Court. McDonald v. Friedman, Case No. RDB-02-2812 (D. Md. Feb. 3, 2004). Our review of the record also convinces us that there is insufficient evidence from which a jury could conclude that the defendants made material misrepresentations. See Sass v. Andrew, 832 A.2d 247, 256 (Md. Ct. Spec. App. 2003)(noting that "fraud or fraudulent inducement means that a party has been led to enter into an agreement...as a result of deceit.")

The McDonalds' theory as to their claim of fraudulent inducement can be reduced to this: the failure of RHB's subsidiary to revise the express terms of the contract as to the franchise location and its refusal to extend indefinitely the "time is of the essence" provision is evidence that the defendants never intended to honor the agreement. This theory is untenable. The franchisor's ultimate reliance on the express terms of the contract certainly cannot be evidence of fraud. Indeed, the argument stands logic on its head. The McDonalds cannot breach their unequivocal written promise to begin franchise operations within twelve months and then cite the franchisor's reliance on the unequivocal, clearly understandable provisions of its written franchise agreement as their evidence of fraud.

5

The McDonalds' theory and evidence on the second claim fare no better. The McDonalds inspected and purchased "as is, where is" used restaurant equipment from a third party, a former franchisee. They complain that defendants represented that the equipment was a "good deal" but that years later they were able to resell it for only a fraction of the purchase price. There is no evidence that the price they paid for the equipment was inflated or that the defendants had any financial stake in the sale of the equipment. In essence, their proof of fraud seems to boil down to nothing more than their inability to sell the equipment years later for a price close to the price they paid for it. There is simply no evidence showing that defendants misrepresented the value of the equipment. Furthermore, even if the McDonalds had produced evidence showing that the purchase price was inflated, we would still find no evidence of any material misrepresentation on the part of the defendants. See First Union Nat'l Bank v. Steele Software Syst. Inc., 838 A.2d 404,442 (Md. Ct. Spec. App. 2003) (noting that "a representation which merely amounts to a statement of opinion, judgment, probability or expectation, or is vague and indefinite in its nature and terms" is not a material misrepresentation).

## III.

We find that the district court appropriately considered and addressed this matter. In addition, we find no evidence from

which a jury could find that the defendants made material misrepresentations and therefore affirm.

                                                    AFFIRMED

7